IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| THI of South Carolina at Columbia, LLC, doing business as Magnolia Manor of Columbia, | ) ) ) ) | C/A No.  3:11-888-CMC |
| Plaintiff, | ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| Deborah J. Wiggins, as Personal Representative of the Estate of Earl Hall, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on motion to compel arbitration filed by Plaintiff THI of South Carolina, LLC, doing business as Magnolia Manor of Columbia ("THI"), and on cross-motion for judgment on the pleadings filed by Defendant Deborah J. Wiggins ("Wiggins"). Dkt. Nos. 8, 28. For the reasons set forth below, THI's motion, which is founded on the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.*, is granted and Wiggins' motion is denied.[1]

THI's complaint and present motion arise from Wiggins' stated intent to take legal action to hold THI responsible for damages associated with the death of her father, Earl Hall ("Hall"). Hall died while a resident of Magnolia Manor of Columbia ("Magnolia Manor"), a residential health care center.[2] Although Wiggins has not yet instituted any legal action against THI, she has indicated an

---

[1] The complaint asserts a single cause of action to compel arbitration. Thus, Wiggins' motion under Rule 12(c) of the Federal Rules of Civil Procedure is simply the converse of THI's motion to compel arbitration.

[2] Because it is necessary at points in this order to distinguish between Defendant and the facility it operated, the court refers to Defendant as THI and to the facility itself as Magnolia Manor.

1

intent to move in state court to add or substitute THI as a judgment debtor on a default judgment she obtained against Magnolia Manor-Columbia, Inc., a distinct legal entity which apparently operated Magnolia Manor at some point in time.

THI moves to compel arbitration of this dispute based on an arbitration provision included in the Admission Contract ("Contract") through which Hall was admitted to Magnolia Manor. THI argues that this arbitration provision controls any dispute with THI regarding Hall's care at Magnolia Manor.

## FEDERAL ARBITRATION ACT

As a threshold matter, a court may compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, if a litigant can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir.2005) (internal quotation omitted). In this matter, Wiggins contests the second element, arguing the dispute is not arbitrable because there is no valid and enforceable arbitration agreement.

When a question of arbitrability arises, the district court decides whether a matter should be resolved through arbitration. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S.Ct. 2847, 2859 (2010); *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). This determination, however, is limited to a two-step inquiry: (1) whether a valid arbitration agreement exists; and (2) whether the specific dispute falls within the substantive scope of the arbitration agreement. *AT&T Tech.*, 475 U.S. at 651; *see Hooters of Am. v. Phillips*, 173 F.3d 933, 938 (4th Cir.

2

1999).[3] The Supreme Court has consistently encouraged a "healthy regard for the federal policy favoring arbitration." *Levin v. Alms and Assocs.*, 634 F.3d 260, 267 (4th Cir. 2011) (internal quotations omitted). "The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Id.* Though the FAA governs whether a dispute is arbitrable, courts must apply state law to decide issues of contract formation. *See Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).

## FACTUAL AND PROCEDURAL BACKGROUND

**Arbitration Provision.** Hall became a resident of Magnolia Manor on May 4, 2005. Dkt. No. 27 at 2. The first page of the Contract, which was executed on that date, states that it is "executed . . . by and among Magnolia Manor-Cola, a corporation located at 1007 N. King St. Columbia S.C. 29223 (the 'Health Care Center'), and Earl Hall ('Patient/Resident'), and/or Deborah Wiggins ('Fiduciary Party')[.]"[4] Dkt. No. 1-1 at 1. The name "Earl Hall" is printed over the signature line for the Patient/Resident. Dkt. No. 1-1 at 4.[5] Wiggins signed the Contract over the signature line for "Fiduciary Party" and marked the block indicating that she signed as an "Immediate Family Member." The contract is also signed by Pearly Williams ("Williams") a "Health Care Center Representative." Williams and Wiggins signed three addenda to the Contract on the same date. Each of these documents identifies the "Health Care Center" as "MMOC, a THI

---

[3] For an arbitration agreement to be subject to the FAA, it must involve interstate commerce. 9 U.S.C. § 2. The FAA has an expansive reach, similar to the Commerce Clause, such that an arbitration clause merely "affecting" interstate commerce would be covered by the statute. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995). The parties here do not dispute that the FAA applies.

[4] While Wiggins questions whether the capacity in which she signed is binding on her father's estate, she does not dispute that she did, in fact, sign the Contract. .

[5] For purposes of this order, the court assumes that Hall did not actually sign the Contract.

3

corporation."

> The Contract contains an Arbitration Provision, which states in pertinent part:
>
> Pursuant to the Federal Arbitration Act, any action, dispute, claim or controversy of any kind (e.g., whether in contract or in tort, statutory or common law, legal or equitable or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of health care services, any agreement between the parties, the provision of any other goods or services by [Magnolia Manor] or other transactions, contracts or agreements of any kind whatsoever, any past, present or future incidents, omissions, acts, errors, practices or occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association[.]

Dkt. No. 1-1 at 4 ("Arbitration Provision").

**State Court Action.** In June 2009, Wiggins, acting as personal representative of her father's estate, filed a civil action in state court alleging three causes of action which stemmed from care Hall allegedly received while a resident of Magnolia Manor: a survival claim for negligence, a wrongful death claim, and a claim of negligence *per se*. *See* Dkt. No. 7.[6] Wiggins named Magnolia Manor-Columbia, Inc. as the sole defendant. *Id.* Despite participating in pre-litigation mediation, Magnolia Manor-Columbia, Inc. failed to file an answer or otherwise defend the state court action leading to entry of default judgment against it in the amount of approximately $4.2 million. Dkt. No. 1 at 4. Wiggins has yet to collect the amount awarded. *Id.* Magnolia Manor-Columbia, Inc. has moved to set aside the default judgment. *See* Dkt. No. 34-7. That motion remains pending. *See* Dkt. No. 38 (responding to inquiry from this court).

---

[6] The state court complaint alleges that those responsible for Hall's care at Magnolia Manor were aware at the time of his admission that Hall had an increased risk of developing bedsores and, by August 2005, knew that he had an increased risk of falling. It further alleges that Hall died from complications of falls and bedsores on May 20, 2007. Dkt. No. 27 at 2.

4

In its complaint in this action, THI alleges that, at some point after default was entered, it became aware that Wiggins "intend[ed] to seek to have the default judgment in the [state court action] amended in order to substitute [THI] for Magnolia Manor-Columbia, Inc." Dkt. No. 1 at 4. On April 1, 2011, THI's counsel sent an electronic message to Wiggins' counsel in an effort to confirm whether Wiggins would be submitting her dispute against THI to arbitration. Dkt. No. 1 at 4-5. Wiggins' counsel responded that Wiggins refused to arbitrate her dispute with THI.[7] *Id.* at 5.   On April 14, 2011, THI filed this action in federal court asserting a single cause of action to compel arbitration under Section 4 of the FAA. Dkt. No. 1.  It filed the present motion the following day, seeking the same relief. Dkt. No. 8.  Both the action and motion rest on the Arbitration Provision found in the Contract signed on the date of Hall's admission to Magnolia Manor.

**Contracting Party**.  In the Complaint, Plaintiff describes its relationships and citizenship as follows:

> Plaintiff [THI of South Carolina at Columbia, LLC, doing business as Magnolia Manor of Columbia] is a single-member Delaware limited liability company that is licensed to operate Magnolia Manor of Columbia ("Magnolia Manor"), a skilled nursing facility located at 1007 North King Street, Columbia, South Carolina. Plaintiff's sole member is THI of South Carolina, LLC, which itself has a single member, THI of Baltimore, Inc., a Delaware corporation with its principal place of business in Maryland. Thus, for purposes of diversity jurisdiction, Plaintiff is a citizen of the States of Delaware and Maryland.

Dkt. No. 1 ¶1.  This statement is consistent with THI's response to Local Civil Rule 26.01

---

[7] In her amended answer, Wiggins confirmed that "she intends to seek amendment of the [state court] judgment." Dkt. No. 29 at 2. On August 12, 2011, in response to an inquiry from this court regarding the status of the state court action, Wiggins stated that she has not yet moved for such an amendment. Dkt. No. 38. While she did not restate her intent to move to add THI as a judgment debtor, neither did she disavow that intent.

Interrogatory C:

> Plaintiff is not a publicly owned company and no publicly owned company has an interest described above. Plaintiff is a Delaware limited liability company whose sole member is THI of South Carolina, LLC, which itself has a single member, THI of Baltimore, Inc., a Delaware corporation with its principal place of business in Maryland.

Dkt. No. 3 at 2.

Although Wiggins offered a general denial to the allegations of the complaint, including regarding THI's structure and ownership, she has offered no affirmative allegations pointing to error in THI's description. *See* Dkt. No. 29 (Amended Answer) ¶2 ("Responding to the allegations of paragraph 1 of the complaint, Defendant lacks sufficient knowledge regarding the corporate structure of Plaintiff to respond and therefore denies the same."); Dkt. No. 22 (Original Answer) ¶ 2 (same). Wiggins does, however, include a defense in which she asserts that "Plaintiff is an alter-ego of Magnolia Manor - Columbia, Inc., and therefore this action is barred by res judicata and constitutes an improper attack on a state court judgment." Dkt. No. 22 ¶18; Dkt. No. 29 ¶18. Wiggins also offers a related argument, that THI is not a party to the Admission Contract, in her response to the motion to compel arbitration.[8] She has not, however, offered any evidence that THI

---

[8] Wiggins argues that THI is not the contracting party for the following reasons:

> Nowhere in the five-page [Admission Contract] is the plaintiff in this action, THI of South Carolina, LLC mentioned. Plaintiff attempts to [elude] this obvious flaw by claiming it is "doing business as" Magnolia Manor of Columbia, but the plain language of the contract demonstrates the falsity of this argument. The contract lists "Magnolia Manor of Cola, a corporation" (emphasis added) as the contracting party. It makes no reference to an LLC. The corporation Magnolia Manor of Columbia is the defendant in the state court action, and the party to the alleged contract – not an LLC which is not mentioned anywhere in the document.

Dkt. No. 27 at 5.

exists under a different structure than is described in the complaint or that it is affiliated in any way with Magnolia Manor-Columbia, Inc.

In contrast, THI proffers the affidavit of Harry Grunstein who avers that he was the President of IHS Long Term Care, Inc. ("IHS") which was the parent company and sole shareholder of Magnolia Manor-Columbia, Inc.  Dkt. No. 34-5 ¶3.[9]  Grunstein also avers that Magnolia Manor-Columbia, Inc., "was the licensed operator of . . . Magnolia Manor-Columbia . . . (the "Facility") until August 30, 2003, after which time the operation and license of the facility was transferred to a new operator, THI of South Carolina at Columbia, LLC ("THI")."  *Id.* ¶4 (stating that, after December 31, 2003,  Magnolia Manor-Columbia, Inc. "ceased all operations and no longer had an active office for business or any officers, directors or agents").  According to Grunstein, "[w]hile THI has continued to operate the Facility under the trade name "Magnolia Manor-Columbia," a common practice in the industry, Magnolia has had no affiliation with the Facility since the transition on August 30, 2003."  *Id. ¶*8.  Moreover, "[w]hile the trade name of the Facility is nearly identical to the corporate name of Magnolia Manor-Columbia, Inc., THI and Magnolia Manor-Columbia, Inc. do not share any common members, managers, officers, or shareholders."  *Id.* ¶9.  Instead, "THI is a separate and distinct corporate entity unaffiliated with IHS or its subsidiary Magnolia Manor-Columbia, Inc.]."  *Id.* ¶10.

Wiggins filed a reply in support of her motion for judgment on the pleadings after the above affidavit was proffered. Dkt. No. 36.  In that reply, she presents multiple arguments challenging

---

[9] This affidavit was apparently first offered in the state court action against Magnolia Manor-Columbia, Inc.

7

enforcement of the arbitration provision *against Hall* (or his estate) and one argument against enforcement *by THI*. In the latter, she argues that THI is not a party to the Contract (or Arbitration Provision) because the documents do not mention "THI of South Carolina at Columbia, LLC." Dkt. No. 36 at 8. She does not, however, question the authenticity of or otherwise address the Grunstein affidavit. Neither does she seek discovery regarding (1) THI's structure or status as licensee of the facility, Magnolia Manor, or (2) THI's relationship, if any, with the similarly named corporation, Magnolia Manor-Columbia, Inc.

## DISCUSSION

THI moves to compel arbitration pursuant to Section 4 of the FAA which states in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof . . . .

9 U.S.C. § 4.

Wiggins' opposition to arbitration focuses on the second of the four threshold factors: whether there is a written agreement that includes an arbitration provision which purports to cover the dispute.[10] Faced with such a challenge, the court considers whether (1) a valid arbitration

---

[10] As explained above, the four threshold factors include: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir.2005) (internal

8

agreement exists and (2) whether the dispute falls within the substantive scope of the arbitration agreement. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). If these criteria are met, the district court has "no choice but to grant a motion to compel arbitration." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002); *see also Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001).

**I.      EXISTENCE OF VALID AND ENFORCEABLE ARBITRATION AGREEMENT**

Wiggins argues that THI has failed to demonstrate that a valid and enforceable arbitration agreement exists for three reasons. *Id.* First, Wiggins argues that the Arbitration Provision is not binding on her in her capacity as the personal representative of Hall's estate. Second, she argues that THI is not a party to the Contract and, consequently, not entitled to enforce the Arbitration Provision. Third, she argues that the arbitral forum selected by the parties was unavailable at the time the parties executed the Contract. *See* Dkt. Nos. 27 and 36.

Each of these arguments raises issues of contract formation which are resolved under the governing state's law. *See Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (noting that, though the FAA governs whether a dispute is arbitrable, state law controls related issues of contract formation). It is undisputed that South Carolina is the governing state with respect to the Contract (and its Arbitration Provision). Thus, the court applies South Carolina law in addressing Wiggins' three challenges to the validity and enforceability of the Arbitration Provision.

---

quotation omitted). It is undisputed that THI has met the first and third of the four threshold requirements to compel arbitration as there is a dispute between the parties and the transaction evidenced by the Contract is related to interstate or foreign commerce. The court has also considered the fourth factor *sua sponte* and concluded that there is a sufficient refusal to arbitrate to support entry of a declaratory judgment addressing whether Wiggins is limited to arbitration of her dispute with THI. *See infra* § III.

### A. As Personal Representative of Hall's Estate, Wiggins Is Bound by the Contract and its Arbitration Provision

In pursuing this action, Wiggins acts as personal representative of Hall's estate. Under South Carolina law, "a personal representative of a decedent domiciled in this State at his death has the same standing to sue and be sued in the courts of this State and the courts of any other jurisdiction as his decedent had immediately prior to death." S.C. Code Ann. § 62-3-703. Thus, Wiggins is bound in her capacity as personal representative if Hall would have been bound immediately prior to his death.

Wiggins argues that THI cannot show a valid written agreement exists between the parties to arbitrate because, even though Wiggins signed the Contract containing the arbitration agreement, "[t]here is nothing in the record to indicate that [Wiggins] had authority to act as agent for [Hall], legally bind [Hall] or waive [Hall]'s right to a jury trial." Dkt. No. 27 at 4. THI responds that Wiggins, as representative of Hall's estate, is required to arbitrate her dispute as Hall was either a third-party beneficiary of the Contract or, alternatively, because he would be estopped from denying that status.

**Third-Party Beneficiary Status.** Under South Carolina law, "[a] third-party beneficiary is a party that the contracting parties intend to directly benefit." *Helms Realty, Inc. v. Gibson-Wall Co.*, 611 S.E.2d 485, 488 (S.C. 2005); *see also Touchberry v. Florence*, 367 S.E.2d 149, 150 (S.C. 1988) ("[t]he presumption that [a] contract is not enforceable by an individual may be overcome by showing that he was intended to be the direct beneficiary of the contract."). Hall did not sign the Contract; however, he is named as the resident to be admitted to the facility. *Id.* The terms of the

10

Contract refer to benefits and responsibilities of the resident, the facility, and the fiduciary party. [11] *Id.* Hall's care was the essential purpose of the Contract. Thus, Hall was an intended third-party beneficiary of the Contract which was signed by Wiggins in her capacity as an immediate family member. It follows that Hall was bound by the Arbitration Provision immediately prior to his death and, consequently, that it remains binding on his estate. *See*, *e.g.*, *Cook v. GGNSC Ripley, LLC*, __ F. Supp. 2d __, No. 3:10CV018, 2011 WL 1439458 (N.D. Miss. Apr. 14, 2011) (holding arbitration agreement in contract for nursing home care was enforceable against third-party beneficiary and her estate under analogous third-party beneficiary law); *Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983 (Ala. 2004) (same); *Trinity Mission Health & Rehab. of Clinton v. Estate of Scott*, 19 So.3d 735 (Miss. Ct. App. 2008) (same).[12]

---

[11] Wiggins signed the Contract as "Fiduciary Party" and "Immediate Family Member." *Id.* She does not dispute that her signature binds her personally, but argues that it does not bind her as personal representative of her father's estate for the reasons stated above. Because the court resolves the issue on other grounds, it need not reach the issue of whether the capacity in which Wiggins signed binds the estate.

[12] In her reply, Wiggins argues that Hall cannot be considered a third-party beneficiary because there was no valid contract between herself and Magnolia Manor. Her claim of invalidity rests on her purported lack of capacity to sign the Contract as a "fiduciary." In arguing that she lacks capacity to act as Hall's fiduciary, Wiggins focuses on her lack of authority to "'pay' anything out of [Hall's] assets in 2005[,]" when she signed the Contract as an "immediate family" member and "fiduciary." *See* Dkt. No. 36 at 2. She argues that any attempt on her part to dispose of Hall's assets to pay for his care would violate public policy rendering the underlying Contract unenforceable. This argument challenges the enforceability of the Contract as a whole and, consequently, is not a matter for resolution by this court. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (in determining that the question of a contract's legality should go to the arbitrator the court held "[f]irst, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002) ("The law is well settled in this circuit that, if a party seeks to avoid arbitration and/or a stay of federal court proceedings pending the outcome of arbitration by challenging the validity or enforceability of an arbitration provision . . . the grounds must relate specifically to the arbitration clause and not just to the contract as a whole.") (internal quotations omitted).

11

**Equitable Estoppel.** Alternatively, Hall's estate is equitably estopped from denying contract formation. It is undisputed that the Contract was signed by an immediate family member of Hall (Wiggins) for the purpose of obtaining residential care for Hall at Magnolia Manor. After execution of the Contract, Hall became a resident of Magnolia Manor and, for an extended period of time, received the benefits provided for in the Contract. Under these circumstances, where the entity operating Magnolia Manor performed in reliance on the terms of the Contract and Hall received the benefit of the Contract, it would be inequitable for Hall's estate (through its personal representative, Wiggins) to avoid the Contract's Arbitration Provision. *See Int'l Paper Co. v. Schwabedizzen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000) (holding that to allow a party to "claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [FAA].").[13]

### B.    THI as Party to Admission Contract

Wiggins' second argument, that THI cannot enforce the Arbitration Provision because it was not a party to the Contract, is equally unavailing. Dkt. No. 27 at 4-5. Wiggins' argument as to THI's ability to enforce the Arbitration Provision rests on the Contract's failure to expressly identify "THI of South Carolina at Columbia, LLC" as a party. THI has, however, presented evidence that it was the registered licensee of Magnolia Manor and the licensee of the facility at the time of Hall's admission in 2005. *See* Grunstein affid. ¶¶ 3-4, 8-10. Wiggins has neither proffered any contrary evidence nor sought discovery as to these or any related issues.

---

[13] THI raises several other arguments to support its contention that Wiggins had authority to bind Hall to the arbitration agreement including that Wiggins had statutory authority and apparent authority to do so. However, as the court finds that Hall was bound as third-party beneficiary and under the doctrine of equitable estoppel, the court need not reach these additional arguments.

It follows that, despite the absence of reference to THI in the Contract itself, THI was the only *legal entity* which could have been bound to perform the obligations of the identified facility, Magnolia Manor. It also follows that, because it was the licensee, THI is the entity which actually performed the facility's obligations under the Contract. THI is, therefore, entitled to enforce the Arbitration Provision.[14]

### C.    Arbitral Forum.

Wiggins' third challenge to enforcement rests on an argument that there was no meeting of the minds because the arbitral forum specified in the Arbitration Provision was "unavailable" at the time the Contract was executed. The claim of unavailability has two prongs. First, Wiggins argues that there was no meeting of the minds because the entity referenced in the Arbitration Provision, the National Health Lawyers Association ("NHLA"), no longer existed at the time the Contract was executed. Second, she argues that the rules of the successor entity which did exist in 2005, the American Academy of Health Lawyers Association ("AHLA"), did not allow it to arbitrate claims unless the arbitration agreement was entered after the alleged injury occurred.

**Existence of Named Forum**. It is undisputed that there was no arbitral forum operating under the NHLA name when the Contract was executed in 2005. According to Wiggins, NHLA ceased to exist due to its merger with another entity which joined to form AHLA. Dkt. No. 27 at 5, n.1. (quoting website as follows "'On July 1, 1997, the National Health Lawyers Association

---

[14]  The Contract expressly refers to "*Magnolia Manor-Cola*, a corporation[.]" (The words shown in italics here were  handwritten on the form while the words "a corporation" were preprinted.) *Id.* However, three addenda to the Admission Contract, completed and signed by Wiggins the same day, refer to "*MMOC* by *THI* a corporation." *Id.* (same use of italics). Thus, although THI is not mentioned in the Contract itself, incorporated documents signed the same day reveal THI's relationship to Magnolia Manor.

13

(NHLA) and the American Academy of Healthcare Attorneys (AAHA) combined into a single organization, creating the nation's largest educational organization devoted to legal issues in the health industry.' (http://www.healthlawyers.org/About/Pages/default.aspx, accessed June 30, 2011)."); *see also* Dkt. No. 36 at 8-9 (Wiggins' reply in support of motion for judgment on the pleadings). THI responds by characterizing the change as one in name only, but does not challenge Wiggins' characterization of how the name change came about. Dkt. No. 34 at 13-14.

Under South Carolina law, for a valid and enforceable contract "there must be a meeting of the minds between the parties with regard to all essential and material terms of the contract." *Player v. Chandler*, 382 S.E.2d 891 (1989). "Where designation of a specific arbitral forum *has implications that may substantially affect the substantive outcome of the resolution*," it is an integral term of the arbitration agreement. *See Grant v. Magnolia Manor-Greenwood, Inc.*, 678 S.E.2d 435, 438-39 (S.C. 2009) (holding that specific designation of a particular arbitrator was an integral term) (emphasis added).

Based on *Grant*, Wiggins argues that because the chosen arbitral forum no longer existed when the Contract was signed (1) an integral term of the agreement was impossible to perform and (2) there was no meeting of the minds, thus rendering the arbitration agreement invalid and unenforceable. Dkt. No. 36 at 9. The court disagrees. Accepting Wiggins' characterization of events, NHLA ceased to exist under that name due to its merger with another entity and adoption of a new name by the combined entity. This is not, alone, a change which would "substantially affect the substantive outcome" of the dispute or procedures to be applied assuming the parties

14

continued to have access to the forum available under the combined name.[15] Therefore, given the Supreme Court's encouragement of a "healthy regard for the federal policy favoring arbitration" (*Levin*, 634 F.3d at 267), the court finds that the merger of NHLA with another entity and adoption of a new (combined) name did not, alone, prevent a meeting of the minds which rendered the arbitration agreement invalid.

**AHLA's Availability to Administer Pre-Injury Arbitration Agreements.** The more critical question is whether limitations on the scope of disputes arbitrated by the AHLA in 2005 precluded coverage of the present dispute and, consequently, prevented a meeting of the minds to arbitrate disputes such as this one. On this issue, Wiggins notes that, in 2005, the AHLA would only arbitrate claims pursuant to arbitration agreements entered into *after* an alleged injury occurred. *Id.* Because the present dispute relates to a post-agreement injury, Wiggins argues that it would not have been allowed under the then-applicable rules, precluding a meeting of the minds as to what claims would be subject to arbitration.

In making this argument, Wiggins relies on the South Carolina Supreme Court's holding in *Grant v. Magnolia Manor-Greenwood, Inc.* 678 S.E.2d 435 (S.C. 2009). There the court held that an arbitration provision became unenforceable when the forum specified in the provision modified

---

[15] In *Grant*, the court noted this very same name change in a footnote without suggesting that it raised any concern as to enforceability of the contract. *See Grant*, 678 S.E.2d at 437, n.1 ("The NHLA has since become the American Health Lawyers Association (the 'AHLA') and hereinafter will be referred to by that name."). This is of particular note as the name change at issue occurred prior to execution of the contract at issue in Grant which, like the Contract here, referred to the NHLA. Thus, the circumstances in *Grant* were similar to those presented in this case as it relates to the designation of the specified forum.

its rules to preclude arbitration of claims for injuries which post-dated the arbitration agreement.[16]

THI argues that this case is distinguishable from *Grant* because while the AHLA was unavailable to hear the parties' dispute in *Grant*, the AHLA is currently able to hear Wiggins' dispute. This availability is the result of a recent rule change which allows for arbitration of disputes regarding injuries which occurred after the arbitration agreement has been executed. *See* Am. Health Lawyers Ass'n Alternative Dispute Resolution Serv., *Rules of Procedure for Arbitration* 1.01 at A-6 (July 2010).

The court agrees that *Grant* is not controlling in light of this distinction. This leaves the question of whether the potential conflict between the breadth of the Arbitration Provision and narrowness of what was arbitrable under AHLA rules at the time the Contract was executed prevented a meeting of the minds. The court finds that it does not for two reasons. First, no evidence has been presented that Wiggins, Hall or anyone else acting on Hall's behalf was even aware of the potential conflict, much less that any party relied on it. Thus, the only evidence of what the parties actually intended is the plain language of the Arbitration Provision. Even if the parties were aware of the rules of the forum, they would have been aware that rule changes were possible

---

[16] The parties in *Grant* executed their arbitration agreement in 2003. *Id.* at 436. In 2004, the AHLA amended its rules to state that it would no longer administer arbitrations pursuant to pre-injury arbitration agreements. *Id.* at 437. Plaintiff suffered injury in 2005. At the time defendant moved to compel arbitration, the 2004 rules were still in force. *Id.* Therefore, despite the arbitration agreement's specification of the AHLA as arbitral forum, the AHLA was unavailable to arbitrate the parties' dispute. *Id.* On these facts, the South Carolina Supreme Court held that the arbitration agreement could not be enforced (including by substitution of an alternative forum) because (1) the parties' choice of arbitral forum was an integral term of the agreement and (2) the arbitral forum was unavailable at the time of the dispute. *Id.* at 439.

16

and that the rules in effect at the time arbitration was invoked would control.[17]  Under these circumstances, the court finds no evidence to support Wiggins' claim that there was no meeting of the minds.

For the reasons set forth above, the court concludes that the arbitration agreement was valid and enforceable as between THI and Wiggins as personal representative of Hall's estate.[18]

## II. ARBITRABILITY OF DISPUTE

Wiggins argues that any dispute between the parties is not arbitrable because the FAA does not give arbitrators authority to either enforce or vacate judgments of the courts of South Carolina. Dkt. 27 at 8.  However, as THI argues, the goal of arbitration in this case is not to thwart enforcement or vacate a judgment, as Wiggins does not have a judgment against THI. *See* Dkt. No. 34 at 16.  Rather, THI seeks to compel arbitration of Wiggins' claim that THI should be held responsible for the default judgment Wiggins obtained against Magnolia Manor-Columbia, Inc. The arbitration agreement entered into between the parties requires that any action, dispute, claim or controversy arising out of Hall's care must be resolved in an arbitration proceeding. *See* Dkt. No.

---

[17] At the time the parties executed the Admission Contract the AHLA rules included a provision stating:

> These rules may be amended or interpreted by the by the [AHLA] from time to time which amendments or interpretations thereafter become binding upon the parties to an arbitration pursuant to these Rules or under the auspices of the [AHLA].  Any reference to these Rules shall be construed to refer to these Rules as amended and interpreted from time to time.

Dkt. No. 34-3 at 20 (AHLA *Rules of Procedure for Arbitration* in force in May 2005).

[18] Had Wiggins raised a genuine issue of material fact as to the existence of the arbitration agreement, the FAA would require the court to "proceed summarily" to jury trial on that issue.  9 U.S.C. § 4.

17

1-1.  A determination of whether THI could be held responsible for the default judgment entered against another party will necessarily require determination of several factual and legal issues related to Hall's stay at Magnolia Manor.  Therefore, Wiggins' claim that THI should be held responsible for the default judgment falls within the scope of the arbitration agreement.

## III.    NATURE OF RELIEF

The specific relief sought by THI is an order compelling Wiggins to arbitrate her dispute. *See* Dkt. No. 34 at 20.  However, Wiggins has not yet instituted a legal action directly against THI nor taken legal action to impose liability on THI, although she has threatened and expressed her intention to seek to amend her default judgment against Magnolia Manor-Columbia, Inc. to include THI.  *See, e.g.*, Dkt. No. 27 at 8  (expressing an intent to "seek to have [the state court judgment] amended to include [THI]").   Under these circumstances, the court finds the relief sought by THI is in the nature of a request for declaratory relief.[19]  Therefore, the court grants THI's motion insofar as it seeks a declaratory judgment that the arbitration agreement is binding.  The court also permanently enjoins Wiggins from prosecuting her dispute with THI in anything other than an arbitral forum as provided in the Arbitration Provision.

## CONCLUSION

For the reasons set forth above, the court grants THI's motion to compel arbitration to the extent it seeks a declaratory judgment that the arbitration agreement is binding and permanently enjoins Wiggins from prosecuting her dispute with THI in anything other than an arbitral forum

---

[19]  This determination considers the fourth threshold requirement for entry of an order compelling arbitration: the failure, neglect or refusal to arbitrate.  Even though Wiggins has evidenced her refusal to arbitrate, there is no current action which the court can compel be sent to arbitration.

pursuant to the Admission Contract.  Thus, Wiggins' motion for judgment on the pleadings is rendered moot.

**IT IS SO ORDERED**.

          s/ Cameron McGowan Currie
          CAMERON MCGOWAN CURRIE
          UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 13, 2011